237 Cal.App.2d 7 (1965)
Estate of PAUL MAJTAN, Deceased. NEWMAN LOUSARIAN, Plaintiff and Respondent,
v.
T. M. ROBINSON, JR., as Administrator, etc., Defendant and Appellant.
Civ. No. 475. 
California Court of Appeals. Fifth Dist. 
Sept. 2, 1965.
 James V. Gregory for Defendant and Appellant. *10
 Ara Ohanesian and James C. Janjigian for Plaintiff and Respondent.
 BROWN (R.M.), J.
 This is an appeal on the judgment roll brought by the Public Administrator, as the duly appointed administrator of the estate of Paul Majtan, deceased, from an order made by the court below purporting to act in the dual capacity of a superior court sitting in the exercise of its probate jurisdiction and at the same time exercising its inherent equitable powers as a court of general jurisdiction. The order, the pertinent portion of which is hereinafter set forth, but briefly summarized at this point, purports to: (1) be a judgment in an equitable action brought by one Newman Lousarian, a stranger to the estate, imposing a constructive trust in the amount of $12,000 upon the assets of the estate of the decedent (although the administrator was not a party to that action); (2) compromise the claim of Lousarian, upon his own petition for compromise, treating him as a creditor of the estate; and (3) order and direct the administrator to cause to be paid forthwith and unconditionally the sum of $12,000 to Lousarian.
 The attorney for Lousarian entitled his petitioning papers and the order in both the equitable action and the probate proceeding and caused the single order to be filed in the equitable action, apparently to operate as a judgment therein, and also to be filed in the probate proceeding, apparently to operate therein as an order approving the compromise of a creditor's claim and directing immediate payment thereof.
 On this appeal the administrator challenges the jurisdiction of the superior court to make the order in the probate proceeding.
 T. M. Robinson, Jr., the Public Administrator, is the administrator of the estate of Paul Majtan, deceased. Alex Majtan and Emil Majtan claim to be the natural sons and heirs of the decedent. Although not specifically shown by the record, it is conceded in the briefs that they are Nationals and residents of Czechoslovakia, and that the State of California opposes their claim on two grounds: (1) that they are not heirs of the decedent and therefore the assets of the estate should escheat to the State; and (2) that no reciprocity exists between Czechoslovakia and the United States. The appellant states that the heirship proceedings have not been determined, though pending, and the respondent does not deny the statement. Newman Lousarian, a stranger to the *11 estate, claims a constructive trust by reason of an unfulfilled promise on the part of the decedent to make a will naming Lousarian as sole beneficiary.
 On July 9, 1964, Newman Lousarian, hereinafter referred to as petitioner or plaintiff, commenced an equity action to impress a constructive trust upon the distributive portion of the estate, naming as defendants the administrator, Alex, Emil and the State of California. The complaint was based upon his contention that the plaintiff had rendered services and cared for the decedent and expended moneys in his behalf in consideration of an oral promise of the decedent to execute a will in his favor.
 Pursuant to stipulation of counsel made in open court, a demurrer interposed by the administrator was sustained without leave to amend upon the ground that the administrator was not a proper party to the action. This order is not in issue on this appeal. The administrator took no further part in the equity suit or trial.
 Trial in the equitable action commenced before the court and a jury on February 10, 1964. On February 18, 1964, at the request of all counsel the jury was excused from further duty and the matter was dropped from the trial calendar.
 On the same day, the plaintiff, on the one hand, and the defendants State of California and Alex and Emil Majtan, on the other, entered into a written stipulation which was entitled in the equity action, the terms of which were approved by the attorney for the administrator. This stipulation is the basis of the further proceedings which culminated in the order from which the appeal is taken. It will therefore be set forth in full:
 "Stipulation That Judgment May Be Taken"
 "It Is Hereby Agreed and Stipulated As Follows:"
 "(1) That Plaintiff Newman Lousarian, may take Judgment against the Defendants Alex Majtan and Emil Majtan and The State of California, appearing by Stanley J. Mosk, Attorney General of the State of California, in the sum of $12,000.00, to be paid only from the assets of the estate of Paul Majtan, deceased, Probate Proceedings #34555 in the above entitled Court, ordered distributed to said defendants, and that said Judgment shall run jointly as against both of said Defendants, to be paid only from the assets of the estate of Paul Majtan, deceased, Probate Proceedings #34555 in the above entitled Court, ordered distributed to said defendants. *12 "
 "(2) That said sum of $12,000.00 represents a compromise settlement of the Plaintiff's claims of having conferred benefits upon the decedent Paul Majtan."
 "(3) That the said Defendants will, to the extent that they are able to have the power to do so, request the Administrator of the Estate of Paul Majtan to pay said sum of $12,000.00 forthwith to the Plaintiff and to prorate the same against the ultimate shares which said Defendants may receive from the Estate of Paul Majtan, and in accordance with the ratio which the respective ultimate interests of each Defendant shall bear to the total Estate of Paul Majtan."
 "(4) That each party shall bear his own costs herein."
 "Dated: February 18th, 1964."
 "Ara Ohanesian & James C. Janjigian"
 By [s] Ara Ohanesian
 Attorneys for Plaintiff Newman Lousarian
 "Nelson Hayhurst & Wallace G. Quinlisk"
 By [s] Wallace G. Quinlisk
 Attorneys for Defendants Alex Majtan and Emil Majtan
 "The State of California, appearing by"
 Stanley J. Mosk, Attorney General of the
 State of California
 By [s] Wm. J. Power
 Deputy Attorney General
 "The terms of the above"
 Stipulation are approved:
 [s] Iener W. Nielsen
 Iener W. Nielsen, Attorney for
 T. M. Robinson, Jr., Administrator
 of the Estate of Paul Majtan
 "It Is So Ordered."
 [s] Harold V. Thompson
 Harold V. Thompson
 Judge of the Superior Court""
 The plaintiff then noticed for hearing in the equitable action a motion to have judgment entered, serving the same upon the State, the two heirs and the administrator, accompanied by a copy of his proposed judgment. The proposed judgment contained an order that the administrator pay the *13 same forthwith. The heirs filed an objection to the proposed judgment in the form of a letter addressed to the trial judge. The plaintiff then noticed in the equitable action a second hearing to have the objections settled and the judgment entered. For some reason not disclosed by the record, the proposed judgment was never entered.
 Plaintiff then, on July 1, 1964, filed a document entitled "Creditor's Petition to Compromise Claim and To Pay Judgment Against Estate." He gave a dual heading to his petition, entitling it in both the equitable action and the probate proceeding. No request for consolidation was made and no order of consolidation filed. The notice of hearing of the petition recites that the presiding judge of the court who was also probate judge, had assigned the petition to be heard by Judge Thompson, who had presided over the partial trial of the equity action.
 After a contested hearing, Judge Thompson made the order which is here under attack. It is as follows:
 "* * * *14 "
 "...; and it appearing to the Court that on February 18, 1964, a written Stipulation was made, signed, entered, and filed, and approved by this Court whereby all these same parties, including the Administrator of said Estate of Paul Majtan, deceased, who approved same and joined therein in writing, his attorney of record duly appearing and authorized, agreed to compromise and to settle all controversies, claims, and demands of Petitioner Newman Lousarian by the payment to Petitioner of the sum of $12,000.00 in cash from the Estate of Paul Majtan, deceased, and it appearing to this Court that said Petitioner Lousarian would be entitled to the benefits of a trust to be impressed upon said estate for $12,000.00 for benefits conferred upon the decedent, Paul Majtan, deceased, during the lifetime of deceased, which is and would be a proper charge against the estate of said deceased, and which stipulation is in writing and filed herein; and it appearing to this Court said compromise and settlement is fair, just, and reasonable as submitted, and is in the best interests of the Estate of Paul Majtan and of all other named parties herein, and ought to be granted and ordered performed, as submitted;"
 "Now, Therefore, it is by the Court Ordered, Adjudged and Decreed as follows:"
 "I."
 "That the Petition to compromise all claims of Petitioner Newman Lousarian, be, and the same is hereby ordered approved, confirmed, and granted as submitted; and T. M. Robinson, Jr. as Administrator of the Estate of Paul Majtan, deceased, is hereby ordered and directed forthwith to cause to be paid unconditionally to said petitioner Newman Lousarian ([TEXT STRICKEN]-[in care of Ara Ohanesian and James C. Janjigian, his attorneys]-) the sum of $12,000.00 in cash from moneys on hand in said estate, in full and complete satisfaction and settlement of all claim and demand whatsoever of said Petitioner Newman Lousarian against said estate of deceased by virtue of and under each and both of the above-entitled matters, or otherwise; and that upon making such payment the said T. M. Robinson, Jr. as Public Administrator and as Administrator of the Estate of Paul Majtan, deceased, shall be entitled to a full credit for said amount so ordered paid in any and all accountings that he may render to the court in the matter of the said Estate of Paul Majtan, deceased. *15 "
 "Dated this 31st day of"
 July, 1964.
 "[s] Harold V. Thompson"
 Harold V. Thompson
 Judge of the Superior Court.""
 As noted above, the order was filed in both the equitable action and in the probate proceeding. The administrator appealed from the order and the whole thereof.
 Since the administrator was not a party to the equitable action, this appeal must be viewed as an appeal upon a judgment roll in the probate proceedings. The primary contention made by the administrator is that the superior court, acting in the exercise of its probate jurisdiction, lacked the power to order a compromise of the claim of a stranger not in privity with the estate and directing the administrator to pay it.
 A similar, but stronger, factual situation was presented to this court in Estate of Boyd, 212 Cal.App.2d 634 [28 Cal.Rptr. 258]. There, the administrator of the estate of a deceased wife claimed the assets of the estate of her deceased husband as the separate property of the wife. The two administrators negotiated and entered into a settlement which provided that property of the value of $14,857.37 would be transferred from the estate of the husband to the estate of the wife. The administrator of the husband's estate failed to perform and, in due course, filed an accounting. The administrator of the wife's estate filed objections, alleging the settlement agreement, that it had been approved by the court, and that assets covered by the agreement were inventoried and accounted for in the husband's estate. Upon hearing, the probate court made its order recognizing the claim of the wife's estate pursuant to the agreement and directed the administrator of the husband's estate to pay over forthwith cash on hand in the sum of $6,007.20 and to pay the additional sum of $8,850.17 as soon as the sums could be made available. Upon an appeal taken by the administrator of the husband's estate, this court reversed the order. At pages 636-638, the court said:
 "Appellant relies solely upon his contention that the probate court lacked jurisdiction to determine a claim of title to estate property by a person not in privity with the estate."
 "We rarely find a case squarely in point with the one at issue, but McPike v. Superior Court, 220 Cal. 254 [30 P.2d 17], is apposite to the case at bar. It arose from like facts, *16 and the Supreme Court considered a question precisely the same as the question presented here. In McPike a stranger claimed title to estate property and filed an action to enforce the claim. A compromise resulted and by a settlement agreement the administrator agreed to pay the claimant, one Annie Gillespie, the sum of $1,000 for a release of all claims. The administrator petitioned the probate court for approval, pursuant to which the court entered an order that the administrator was 'authorized to pay to said Annie Gillespie the sum of one thousand ($1,000.00) dollars in full settlement of all claims and demands of Annie Gillespie against the said estate and said administrator' upon the receipt of a dismissal of her action with prejudice and a signed satisfaction. Counsel for Annie Gillespie made tender of a dismissal with prejudice and a satisfaction, as required by the order, and demanded payment of the $1,000. The administrator failed to comply, and Annie Gillespie petitioned the probate court for redress. Upon hearing the petition for an order for payment, the probate court made an order by which the administrator was 'ordered and directed to pay to Annie Gillespie within five (5) days from date hereof the sum of one thousand ($1,000.00) dollars pursuant to his said agreement of compromise and the order of this court made on July 25, 1932, approving the same.' The administrator appealed, and the Supreme Court said, at pages 257-258:"
 " ' "Upon this proceeding we are not concerned with the propriety or impropriety of petitioner's conduct with regard to the compromise, nor with the correctness or incorrectness of the action of the trial court in making the order complained of, further than to determine the single question whether the respondent court had jurisdiction to make such order. (4 Cal.Jur., p. 1106.)
 " ' "The probate court has the power to authorize the compromise of an adverse claim of a third party to the property of an estate. (Probate Code, 578, formerly Code Civ. Proc., 1588, as construed in Merrill v. Bachelder, 123 Cal. 674, 676 [56 P. 618].) The precise language of that code section is: 'A compromise may also be authorized by the court or judge when it appears to be just and for the best interest of the estate.'
 " ' "Nowhere in express terms is the probate court given the power, sought to be exercised by the order here under attack, of compelling the administrator to carry out and perform the provisions of a compromise so authorized. It is *17 settled that ordinarily a probate court has no jurisdiction over the adverse claims of third persons to property in the estate (11 Cal.Jur., p. 262, 42) and this for the reason 'that either the person initiating the attack or the person resisting the attack is lacking in privity to the probate proceedings.' (Bauer v. Bauer, 201 Cal. 267, 271 [256 P. 820].) It is equally well settled that while the superior court, sitting in probate, is a court of general jurisdiction, 'the proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory.' (11 Cal.Jur., pp. 248-9, 34.)" ' (See also Estate of Hart, 51 Cal.2d 819, 823 [337 P.2d 73]; Mazza v. Austin, 25 Cal.App.2d 85, 88 [76 P.2d 533]; Estate of Cropper, 83 Cal.App.2d 105, 107 [187 P.2d 780]; Estate of Stone, 170 Cal.App.2d 533, 535 [339 P.2d 220].)"
 [1] In an attempt to support the judgment, the petitioner contends that the superior court acted in a dual capacity in making the order, i.e., as a court of general jurisdiction exercising its inherent equitable powers and as a court acting in the exercise of its probate jurisdiction. Concededly, there are controversies of such a nature and between parties who are in privity with the estate that the dual jurisdiction of the superior court is invoked. This is not one of them. [2] As pointed out in Schlyen v. Schlyen, 43 Cal.2d 361, at pages 372-373 [273 P.2d 897]:
 "It is established by the case law of this state that the superior court acting in the exercise of its probate jurisdiction is without power to try title to property asserted by a stranger to the estate as against the estate. (Estate of Dabney (1951) 37 Cal.2d 672 [234 P.2d 962], and cases there cited.) Such actions are triable by the court in the exercise of its general jurisdiction. [3] It is likewise established that when title to property of an estate is claimed by heirs or other beneficiaries of the estate to belong to the estate and is also claimed by the representative of the estate to belong to him in his individual capacity the superior court, sitting in probate, has jurisdiction over the controversy. [Citations.] The reasons for the latter rule run through the numerous cases on the subject and are many. The determination of such *18 a controversy is an incident to the proper settlement of the estate. [Citation.] All of the parties to the proceeding are in privity with the estate and it is their distributive rights that are affected by the proceeding in probate. ... [4] It is certainly true that the court in a probate proceeding is concerned with the settlement of the estate and not with controversies between the estate and strangers, the adjudication of which is the function of the court in the exercise of its general jurisdiction."
 The cases relied upon by petitioner are not in point. Thus, in Estate of Arms, 186 Cal. 554 [199 P. 1053], by consent in open court a petition for partial distribution and a civil action brought by the widow of the decedent, who was a named beneficiary under his will, against the residuary legatees and devisees to declare and enforce in her favor a resulting trust were joined for hearing and the Supreme Court found no objection to such joinder. In that case all of the parties were in privity with the estate. In Monarco v. Lo Greco, 35 Cal.2d 621 [220 P.2d 737], a constructive trust based upon the failure of a decedent to keep an oral promise was imposed upon property held by distributees of the assets of the decedent's estate. The action is an equitable action brought after a decree of distribution had been made by the probate court and the assets distributed. Thus, the jurisdiction of a probate court is not there involved. Two cases upon which petitioner relies deal with the equity powers of the superior court acting as a court of general jurisdiction and do not involve probate matters--Carruth v. Fritch, 36 Cal.2d 426 [224 P.2d 702, 24 A.L.R.2d 1403], involving the rescission of a release obtained by fraud; and Santa Monica Ice etc. Co. v. Rossier, 42 Cal.App.2d 467 [109 P.2d 382], dealing with the equity powers of the court in connection with an action for an injunction restraining disclosure of trade secrets.
 We find that the matter must be determined on the jurisdictional point under the authority of Estate of Boyd, supra, McPike v. Superior Court, 220 Cal. 254 [30 P.2d 17], and Schlyen v. Schlyen, supra.
 Appellant also points out, argues and cites authority for the following points:
 The stipulation was between the petitioner and the claimants to the estate; the administrator was not a party to it, nor did his approval of its terms make him a party. The stipulation authorized judgment to be entered in favor of the petitioner to be paid out of any assets of the estate which *19 might be distributed to Alex, Emil and the State of California, or any of them; it did not authorize a judgment against the assets of the estate generally, nor did it authorize a direction compelling the administrator to make immediate payment. It is pointed out that there has been no decree of distribution. The administrator was not a party to the equitable action and, if the court was acting as a court of general jurisdiction, it had no jurisdiction over the person of the administrator nor subject matter jurisdiction over the estate; if it was acting as a probate court, it had no jurisdiction over the person of the petitioner, a stranger to the estate, or the subject matter of the equitable action.
 It is argued that the power of the superior court in the exercise of its probate jurisdiction is limited and statutory; that the petitioner is not a creditor of the estate in the strict sense; that, although he did not obtain a judgment in the equity action prior to filing the petition here involved, if he be considered to be a judgment creditor, the probate court lacks power to consider his petition to compromise his claim. [5] Section 718.5 of the Probate Code confers power upon the administrator or executor, with the approval of the court, and in his discretion to compromise or settle a claim by or against the estate. It provides that "To obtain such approval, the executor or administrator shall file a verified petition with the clerk. ..." No authority is conferred by any statute upon the creditor to petition for compromise of his claim. The case law holds that the power is restricted to the administrator or executor.
 Appellant further argues that section 718.5 of the Probate Code gives the court authority to approve a compromise but not to direct the making of compromises. In the McPike v. Superior Court case, supra, 220 Cal. 254, at page 259, the Supreme Court said: "It is thus apparent that in the several instances enumerated where the legislature intended to give the court jurisdiction to compel action by the administrator in his dealings with strangers to the estate it used definite and appropriate language to expressly grant such power. In the case of compromises, however, no such language was used. The court is not given power to 'direct' the making of compromises but only to 'authorize' them. It is not provided that compromises 'shall' or 'must' be made by the administrator when authorized by the court, but that they 'may' be made. The internal evidence of the Probate Code indicates strongly that it was not the intention of the legislature to confer upon *20 courts sitting in probate the power or jurisdiction to compel action by the administrator in the case of compromises." (See also Estate of Coffey, 161 Cal.App.2d 259 [326 P.2d 511]; Estate of Lucas, 23 Cal.2d 454, 464 [144 P.2d 340]; Mazza v. Austin, 25 Cal.App.2d 85, 88 [76 P.2d 533].)
 The petitioner argues that, had the equitable action been fully tried in the court below it could have resulted in a constructive trust being imposed upon all of the assets of the decedent's estate which would have removed the entire estate from the possession of the administrator, and therefore the court was justified in ordering immediate and unconditional payment of the sum of $12,000. The law is to the contrary. [6] Where an inter vivos trust or a resulting trust is proved, the res thereof is not a part of the probate estate; but where the claimant is seeking to impose a constructive trust arising from an unfulfilled promise of the decedent to make a will in the claimant's favor, a different result is reached. Such a trust does not interfere with the administration of the estate. Thus, had the petitioner obtained a decree in the equitable action imposing a constructive trust upon all property to be distributed to the defendants therein, the administrator would proceed to administer and close the estate and distribute to the petitioner the residue.
 The principles governing such a trust were considered in Estate of Miller, 212 Cal.App.2d 284 [27 Cal.Rptr. 909]. At page 293, the court discussed the case of Ludwicki v. Guerin, 57 Cal.2d 127 [17 Cal.Rptr. 823, 367 P.2d 415], and quoted from that opinion as follows: "It is pointed out (p. 130) that such an action is one for 'quasi-specific performance of the contract to make a will,' that since no one can be compelled to make a will, the agreement cannot result in specific performance 'in the strict sense, but under certain circumstances equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff.' The situation in that case, which parallels the present record, is thus discussed (pp. 131-132):"
 " 'When a person dies, the title to his property, real and personal, passes to the person to whom it is left in his will or who takes by intestacy, but all his property is subject to the possession of the executor or administrator for purposes of administration. (Prob. Code, 300.) If the will creates an express trust, the legal title of the trustee and the equitable title of the beneficiary vest as of the date of death, even though the trust estate is residuary in character. (Estate of *21 Platt, 21 Cal.2d 343, 347 [131 P.2d 825].) The same principle should be applied to a constructive trust based on conduct of the decedent, including failure to perform a promise to make a will. Accordingly in such a situation a constructive trust in favor of the promisee and against those who take under decedent's will or by intestacy may be imposed immediately after the date of death."
 " 'The action to impose the trust does not interfere with the proceedings in probate. It does not set forth a claim against the estate, or against the executor, or against his right to possession for the purposes of administration. The action is in effect a suit between a claimant under the contract and claimants under the will or by intestacy as to who is entitled to all or part of the estate, and it does not purport to interfere with the administration by the executor, who, with respect to the proceeding, is in the position of a stakeholder. [Citation.]' "
 In Miller, also, the court discussed the clear distinction between the probate court and the equity court.
 [7] Petitioner's argument that this appeal is moot because the order was filed in the equitable action as well as the probate proceedings, and that it is a final order in the equitable action upon which the plaintiff may procure and cause to be levied an execution, is without merit. There is only one order and its validity or invalidity as determined in connection with the probate proceedings follows it wherever it may be filed. To the extent that it may be determined void as beyond the power of the probate court to make, it is legally infirm in the equitable action.
 [8] Further, it is the general rule that a judgment may not be entered against a person who is not a party to the litigation, and any judgment which does so is void to that extent. (In re Wren, 48 Cal.2d 159, 163 [308 P.2d 329]; Hutchinson v. California Trust Co., 43 Cal.App.2d 571, 575 [111 P.2d 401].) [9] The order filed in the equitable action is not binding upon the administrator, who was not then a party thereto.
 A case of "instant justice" by the use of unauthorized shortcuts should not be permitted.
 [10] Respondent also argues that this is a consent judgment since the attorney for the administrator approved the terms of the stipulation. The stipulation is neither a decree nor a consent decree nor a mere contract between the parties. It is merely a stipulation entered into by the litigants in the *22 equity action for the purpose of terminating the pending litigation between them upon terms upon which they agreed. The administrator was not then a party to that action. The equity court did not have jurisdiction over his person or subject matter jurisdiction over the probate estate. The parties to that action could have settled their litigation and the equity court could have entered judgment predicated upon the stipulation without any approval of the administrator. As to that proceeding, he was a mere stakeholder. (Estate of Miller, supra, 212 Cal.App.2d 284, 294.)
 Respondent also argues that, although the administrator was removed as a party to the equitable action upon stipulation of counsel made in open court, he nevertheless somehow voluntarily re-entered the equitable action, became a party thereto, and became bound therein by the order insofar as it purports to relate to that action. This argument is predicated upon the fact that his attorney approved the terms of the stipulation. No authority is cited for this unusual proposition, probably for the reason that none exists. [11] One may become a party to an action only in one of the ways provided by law. There is no statutory provision to the effect that where one not a party to an action gratuitously approves a stipulation between those who are parties, he thereby becomes a party for all purposes of the litigation. [12] As was said in First Federal Sav. & Loan Assn. v. State Board of Control, 53 Cal.App.2d 391, 398 [128 P.2d 75]: "The word 'approve' has no technical meaning and the court is without power to extend its meaning beyond that which the 'approved usage of the language' contemplates, unless a contrary or more limited construction 'according to the context' obviously is intended. (Civ. Code, 13.)"
 Among the definitions of the word "approve" as found in Webster's Third New International Dictionary, appears the following: "to judge and find commendable or acceptable; think well of." [13] The approval of terms of a stipulation by one not a party thereto and not a party to the litigation which the stipulation is designed to terminate and whose sanction is not legally required, can mean no more than that he thinks well of it and finds it commendable and acceptable. By no stretch of the imagination can such approval make the administrator a party to the action bound by all further proceedings taken therein.
 The judgment is reversed.
 Conley, P. J., and Stone, J., concurred.