65 Cal.App.3d 112 (1976)
135 Cal. Rptr. 115
Estate of LARRY N. BLACK, Deceased.
LYNN WOOD, as Public Administrator, etc., Petitioner and Respondent,
v.
HELEN LOUISE WATSON, Objector and Appellant;
ERIK ERLANDSSON, Claimant and Respondent.
Docket No. 2772.
Court of Appeals of California, Fifth District.
December 20, 1976.
*114 COUNSEL
Nielsen, Hales & Hayden and Leon L. Anderson for Objector and Appellant.
Edward R. Fitzsimmons, Ken Fishbach and Richard Heimann for Claimant and Respondent.
No appearance for Petitioner and Respondent.
OPINION
BROWN (G.A.), P.J.
The objector and appellant, Helen Louise Watson, appeals from an order of the superior court, sitting in probate, approving the compromise of the claim of claimant and respondent, Erik Erlandsson, against the estate of Larry N. Black, deceased.
Erlandsson presented a general, nonpriority creditor's claim for $38,250, which was approved and allowed by the personal representative and approved by the court in the amount of $29,250. The court-approved compromise of this claim provided for the transfer of all of the right, title and interest of the estate, including immediate possession, in the purebred Arabian stallion [*]Exelsjor to Erlandsson in exchange for the release of all of Erlandsson's claims against the estate. Appellant's central thesis is that in view of the poor financial condition of the estate the court acted in excess of its authority and abused its discretion in approving the compromise which resulted in the transfer of the principal *115 asset of the estate to satisfy a general creditor's claim without considering the sufficiency of the assets in the estate to satisfy high-priority creditors' claims as established in Probate Code section 950.[1] Among the priority claims referred to by appellant Watson is a claim by her for executrix' fees in excess of the sum of $14,000.
A brief statement of the background facts is essential to an understanding of the ensuing discussion.
Prior to his death decedent Larry N. Black purchased [*]Exelsjor from Erlandsson under an installment sale contract under the terms of which Erlandsson contended that title did not pass until the purchase price was paid. At the time of Black's death $29,250 remained due upon the $38,250 purchase price.
Watson, the decedent's sister, claimed title to the horse by virtue of a transfer to her by decedent prior to his death.
Initially, Watson was appointed executrix. The public administrator, Lynn Wood, respondent herein, has replaced Watson as administrator with the will annexed.
In a collateral quiet title action, the public administrator sued both Watson and Erlandsson to establish title to the horse. Watson was sued on the theory that the transfer of the horse to her prior to the decedent's death was in fraud of creditors. A directed verdict was granted in favor of the estate and against both Erlandsson and Watson. An appeal to this court by both of these defendants was dismissed as premature inasmuch as the issue of damages as to Watson had not been determined. That cause is still pending in the trial court.
(1) Preliminarily it is noted that upon recovery of possession of the horse from the transferee, Watson, in an action founded upon the theory that the horse was initially transferred in fraud of creditors the property is treated in the same manner as other property in the hands of the personal representative of which the decedent died seized or possessed. Section 580, set forth in the margin, so provides.[2] At oral argument *116 appellant took the position that the last sentence of section 580 prohibited the transfer of the recovered horse. No such prohibition can be read into the section. It is manifest that the obligation to return to the person from whom the property is recovered any proceeds after the debts of the decedent are paid does not arise when the assets in the estate, including the asset recovered, are insufficient to pay all of the debts of the decedent.
(2a) Adverting to appellant's principal contention that before approving the compromise the court should have satisfied itself that there were sufficient assets in the estate to satisfy priority creditors, we start with an analysis of the provisions of section 718.5 authorizing the compromise of claims. That section provides in pertinent part: "After the lapse of 60 days from the issuance of letters testamentary or of administration, the executor or administrator, with the approval of the court, may compromise, compound or settle any claim or demand by or against the estate or any suit brought by or against the executor or administrator as such, by the transfer of specific assets of the estate or otherwise. To obtain such approval, the executor or administrator shall file a verified petition with the clerk showing the advantage of the compromise, composition or settlement."
(3) "The sole question, therefore, when the approval of a compromise is sought under section 718.5, supra, should be whether the settlement is advantageous to the estate, and this is the only requirement expressly included in the language of the statute." (Estate of Lucas (1943) 23 Cal.2d 454, 467 [144 P.2d 340].) Thus, the protection from liability gained by the administrator or executor by having obtained court approval of the compromise is from "any possible charge that the claim was invalid or the settlement imprudent," that is, a settlement disadvantageous to the estate. (Estate of Lucas, supra, 23 Cal.2d 454, 464.)
(2b) In this case the trial court, after a hearing on the petition to compromise, made specific findings detailing the advantages to the estate in entering into the compromise. Appellant has not attacked those determinations nor made any argument that the compromise of Erlandsson's claim is not advantageous to the estate.[3]
*117 Section 950, which appellant argues the court violated by approving the compromise, establishes the order in which creditors' claims should be paid.[4]
Section 952 directs the payment in the order stated in section 950 and provides that "[n]o creditor of any one class shall receive any payment until all those of a preferred class are fully paid; and if the estate is insufficient to pay all the debts of any one class, each creditor of that class must be paid a dividend in proportion to his claim." Under this section the payment is to be made pursuant to order of the court upon the settlement of any account "after the time to file or present claims has expired." Section 951 provides an exception to section 952 in that it authorizes the representative to pay claims of classes (2), (3), (4) and (6) (see fn. 4) without court order and as soon as sufficient funds are on hand after first holding out sufficient funds to satisfy class (1) debts.
(4) Neither the personal representative nor the court has the authority to alter the order of payment established by section 950. (Tompkins v. Weeks (1864) 26 Cal. 50, 66.)
It is the personal representative who bears the risk of paying a claim without court authorization and at the time of the final accounting discovering the estate has insufficient assets to satisfy higher priority creditors. (Estate of Mailhebuau (1933) 218 Cal. 202, 204 [22 P.2d 514]; Estate of Fernandez (1898) 119 Cal. 579, 581-582 [51 P. 851]; Estate of Girard (1952) 110 Cal. App.2d 203, 206 [242 P.2d 669]; Tomlinson, Administration of Decedent's Estates (1972) § 9.5, p. 108, § 19.3, pp. 243-244; 4 Bancroft's Probate Practice (2d ed. 1950) § 1028, pp. 214-216; 1 Cal. Decedent Estate Administration (Cont. Ed. Bar 1971) § 13.41, p. 486.)
*118 (2c) Implicit in appellant's contention that at the time the court hears the petition for approval of a compromise the court must consider whether or not satisfaction of the compromise will jeopardize payment of higher priority creditors' claims is the notion that the court's order approving the compromise insulates the personal representative from liability for paying lower priority claims to the prejudice of higher priority creditors' claims. However, for the reasons about to be stated, we have concluded that notwithstanding the approval of the compromise the personal representative remains liable to higher priority creditors should the assets prove insufficient to pay their claims, and therefore the court need not consider the sufficiency of the assets in the estate to satisfy already existing higher priority creditors' claims in approving the petition to compromise a lower priority claim.
There is nothing in the law governing compromises which would indicate the Legislature intended the policy favoring settlements of claims to supersede its strongly stated policy concerning the proper order of priority in payment of creditors' claims.
Section 718.5 empowers the personal representative to compromise a creditor's claim with court approval and transfer assets in satisfaction of the compromise 60 days following issuance of letters, which is some two months prior to the deadline for creditors to file claims against the estate (see § 700); in other words, two months before the personal representative has any solid information concerning the sufficiency of funds to pay higher priority creditors. This statute evidences an intent by the Legislature to give the personal representative flexibility in negotiating compromises of creditors' claims, the timing as well as the authorization to transfer a specific asset being crucial to the effectuation of many desirable compromises. At that point in time the court obviously would be in no position to consider the effect on priority creditors of approving the compromise. This procedure is in contrast to a court order directing the payment of claims pursuant to section 952. In such an instance it would be improper to issue such an order prior to the deadline for filing creditors' claims, particularly in insolvent estates. (See § 952; Estate of Spanier (1898) 120 Cal. 698, 701 [53 P. 357]; In re Smith (1897) 117 Cal. 505, 508 [49 P. 456].)
(5) Moreover, unlike the situation with regard to an order directing the payment of claims pursuant to section 952,[5] section 718.5 merely *119 permits the court to authorize a compromise. The court is without the power to compel the administrator to make such a compromise (Estate of Coffey (1958) 161 Cal. App.2d 259, 265 [326 P.2d 511]) or to perform an approved compromise made with a stranger to the estate (for example, by ordering payment to be made pursuant to it) (Estate of Majtan (1965) 237 Cal. App.2d 7, 15-18 [46 Cal. Rptr. 561]; Estate of Coffey, supra, 161 Cal. App.2d 259, 265; 7 Witkin, Summary of Cal. Law (8th ed.) Wills and Probate, § 443, pp. 5885-5886; see McPike v. Superior Court (1934) 220 Cal. 254, 258-260 [30 P.2d 17]; Estate of Boyd (1963) 212 Cal. App.2d 634, 636-638 [28 Cal. Rptr. 258]).[6]
Because the probate court cannot order performance of the compromise, no vested rights are created by the court's approval of the settlement, and the executor or administrator retains his authority to determine when the compromise should be satisfied. (Estate of Coffey, supra, 161 Cal. App.2d 259, 265.) Vested rights are created only when the compromise has been executed. (Id.) Up until that point the probate court may even withdraw its approval of the compromise. (Byrne v. Harvey (1962) 211 Cal. App.2d 92, 112 [27 Cal. Rptr. 110].)
Finally, to place the responsibility on the court to determine the sufficiency of the assets at this early point in the probate process is inconsistent with the entire scheme of probate procedure, which places that responsibility upon the executor and gives the creditors recourse against the executor personally for improper management of the estate's affairs. No such recourse would be available against the court. Should the probate court be considered vested with such responsibility to ascertain the sufficiency of the estate's assets, it is likely that few, if any, courts would approve compromises until the final accounting, thereby destroying the apparent flexibility granted executors by section 718.5.
*120 (2d) We conclude that a court need not consider the sufficiency of the assets in the estate to satisfy already existing higher priority creditors' claims in approving the executor's petition to compromise a lower priority creditor's claim. And, the court's order approving a compromise implies no such finding and provides no protection to the executor from liability to higher priority creditors should the estate later prove insolvent. (See Estate of Spirtos (1973) 34 Cal. App.3d 479, 492 [109 Cal. Rptr. 919].)
At the time of the final accounting a priority claimant may well have a cause of action against the personal representative personally if the estate turns out in fact to be insolvent and the priority claim is not paid. In addition, such a cause of action does not now exist in the case at bench because absent an order of payment issued by the probate court the appellant, as a creditor falling in category (1) under section 950 (expenses of administration), has no vested right to immediate payment. (1 Condee, Cal. Practice, Probate Court Practice (2d ed. 1964) § 765, p. 495.)
The order is affirmed.
Gargano, J., and Franson, J., concurred.
NOTES
[1] All code sections cited are from the Probate Code unless otherwise indicated.
[2] The relevant part of section 580 states: "All property so recovered must be sold for the payment of debts, in the same manner as if the decedent had died seised or possessed thereof, and the proceeds must be appropriated in payment of the debts of the decedent in the same manner as other property in the hands of the executor or administrator. The remainder of the proceeds, after all the debts of the decedent have been paid, must be paid to the person from whom such property was recovered."
[3] Some of the advantages to the estate are: Erlandsson acquired only the right, title and interest of the estate in the horse without warranty of title. It became the duty of Erlandsson to defend the title obtained by the estate in the collateral litigation at a great saving to the estate. Should Watson eventually prevail in that litigation, the estate will have rid itself of a $29,250 claim in return for nothing. Secondly, the estate no longer has to concern itself with the outcome of the Erlandsson appeal, which included rather complicated issues of title under Swedish law, and which also included claims against the estate of misuse of the stallion's breeding rights, damage to his condition, failure to promote the stallion's name and reputation, and failure to preserve the stallion's bloodlines and breeding reputation by mating the stallion to appropriate mares. Thirdly, the compromise eliminates the expense and problems of keeping and maintaining the horse without any probability of being able to sell him while the pendency of the litigation clouded the title.
[4] The order of priority established in section 950 in summary is: (1) expenses of administration; (2) funeral expenses; (3) expenses of last illness; (4) family allowance; (5) debts having preference by laws of the United States; (6) wages to a limited extent; (7) mortgages and judgment liens; (8) general creditors' claims.
[5] Section 951 states the executor is "not obliged to pay any other debt [than priority classes (2), (3), (4) and (6) as set forth in section 950] or any legacy until, as prescribed in this article, the payment has been ordered by the court." (Italics added.) Section 718.5, here at issue, is not contained within the article referred to (ch. 15, art. 4, §§ 950-956: "Payment of Debts, Expenses and Charges"). Significantly, it is contained within chapter 12, article 1, sections 700-719, referring to the presentation of creditors' claims, and does not even come within article 2 of chapter 12 dealing with rules as to payment of claims. Some inference can be drawn from its placement in the code that section 718.5 was intended by the Legislature to refer to the amount of a claim approved, rather than to the payment of the claim.
[6] McPike and Boyd dealt with section 578, which permits the administrator with court approval to compromise or compound a debt owing to the estate. The court in McPike distinguished the permissive language of section 578 (similar in most respects to that of section 718.5) with the express power given the probate court by section 952 to order the payment of approved claims. (McPike v. Superior Court, supra, 220 Cal. 254, 258.)