68 Cal.App.3d 1010 (1977)
137 Cal. Rptr. 727
Estate of REMBERT C. ANDERSON, Deceased.
CROCKER NATIONAL BANK, as Executor, etc., Petitioner and Appellant,
v.
MARGARET ANDERSON KELLY et al., Objectors and Respondents.
Docket No. 49533.
Court of Appeals of California, Second District, Division Two.
April 12, 1977.
*1011 COUNSEL
Paul, Hastings & Janofsky, George E. Stephens, Jr., and Peter D. Collisson for Petitioner and Appellant.
John J. Nolan, Jr., Peter W. Anderson, Wehrle & Anderson, Hill, Farrer & Burrill and David C. Grant for Objectors and Respondents.
OPINION
FLEMING, J.
The executor of the estate of Rembert C. Anderson (decedent) appeals the probate court's denial of a family allowance to the surviving spouse. The controlling statute is Probate Code section 680, which provides that in an insolvent estate, family allowance "must not *1012 continue longer than one year after granting letters."[1] (1) The probate court based its denial of family allowance on a finding of insolvency, which in turn it deduced from the existence of civil actions filed by nieces and nephews of decedent (respondents) against the estate for damages in excess of the value of the estate for decedent's breach of fiduciary duty, constructive trust, conversion, and waste occurring in 1934. The probate court declined to examine the probability of success in these lawsuits, concluding that because these lawsuits had survived law and motion procedures in the superior court the estate was insolvent within the meaning of the statute. The court held: "Because the lawsuit brought against the estate upon the complaints of Margaret Anderson Kelly, Trent G. Anderson, Jr., and James R. Anderson have successfully completed all law and motion procedure and are at issue, there is, as a matter of law, a reasonable probability that said lawsuit will render the estate insolvent. Therefore, under Probate Code section 680 the Court must deny the petition for family allowance and terminate family allowance."
Respondents' actions against the estate allege that decedent, their uncle, in conjunction with their parents as co-trustees, mismanaged a testamentary trust of which they were ultimate remaindermen by permitting the sole asset of the trust, a parcel of real estate, to be lost by foreclosure during the depression in 1934. They also claim that decedent and their parents wrongfully failed to comply with the order in the decree of distribution in their grandfather's estate requiring that $1,000 be deposited for each respondent in a savings bank and distributed with accrued interest upon his or her majority. They claim damages in excess of the value of the probate estate (inventoried at $1,035,972.40) and seek to identify assets currently in the estate as wrongful profits that accrued to decedent as a result of failure to redeem the trust property.
As the probate court noted, these actions survived the law and motion stage. However, appellant executor has highlighted a number of factors that make it unlikely respondents' actions will meet with any success. For *1013 example, in order to avoid the bar of the statute of limitations, respondents allege they did not know of the allegedly wrongful acts that took place in 1934 and could not have learned about them before decedent's death. Yet the co-trustees of the allegedly mismanaged trust were decedent's brother and sister, parents of respondents. Appellant further asserts there is no merit in respondents' claim that decedent wrongfully permitted the real estate to be lost by foreclosure, inasmuch as the property was foreclosed during the depression, was then unoccupied, there were no assets in the trust to pay the upkeep on the property, and no way to make it generate income. Additionally, it seems probable that respondents will have difficulty proving that decedent's motive (and that of respondents' parents) in not redeeming the property in 1934 was to divert funds into other parcels of land in his own name in order to enrich himself at the expense of the trust. Yet on this theory respondents claim damages of approximately $2,292,182, which include compound interest and treble damages for decedent's asserted willful and deliberate misconduct. In valuing the lost property respondents used the appraisal in the estate of decedent's father, their grandfather, in 1930. The property was valued at $96,250 in 1930 before the depression caused land values to plummet. The property was then subject to a $15,000 mortgage, which was the one foreclosed in 1934. Respondents assert the trustees had independent means to meet the mortgage payments, but not that the trust had any liquid assets to enable them to do so. Furthermore, respondents base their damages on the value of a fee interest in the property, when in fact in 1934 they had only a remainder interest therein. There is scant likelihood respondents will persuade a court to award them treble damages for willful or wanton waste committed by a life tenant (Code Civ. Proc., § 732) against the estate of a deceased life tenant for permitting foreclosure of his interest over 40 years ago.
Under section 680, when an estate is insolvent, termination of family allowance one year from the grant of letters is mandatory. At bench letters were issued 6 February 1975, and the widow received family allowance from 8 January 1975 to 8 April 1976. Accordingly, the only discretion in the probate court was to determine whether the estate was insolvent. California cases in point are Estate of Murphy (1964) 225 Cal. App.2d 224 [37 Cal. Rptr. 205], and Estate of Cates (1971) 16 Cal. App.3d 1 [93 Cal. Rptr. 696]. In Murphy, a civil action had been filed against the estate claiming decedent had obtained all assets of the estate from his aunt through undue influence. Claimants sought to impress a constructive trust upon the assets and obtained a preliminary injunction on the civil side of the court enjoining the administratrix from *1014 transferring any assets or funds out of the estate. Accordingly, the probate court terminated the widow's family allowance after one year. The appellate court affirmed this exercise of judicial discretion, finding it reasonably probable the estate would be rendered insolvent by the pending litigation. In Cates, decedent's will in favor of his second wife was under attack as a violation of the joint and mutual will made with his first wife in Illinois. After the heirs under the first will secured an Illinois judgment establishing the validity of the mutual will under the collateral estoppel doctrine, they objected to further payment of family allowance to the second wife. The appellate court reversed the probate court's grant of continued family allowance to the second wife (who had been receiving family allowance for more than eight years), holding further payments improper in view of the pending litigation in Illinois.
The Murphy and Cates cases are distinguishable from the case at bench to the extent that in the lawsuits filed against those estates, a favorable outcome for the adverse claimants was readily apparent. In Murphy, the judge trying the constructive trust action had been willing to issue an injunction restraining the executor from disbursing estate assets, and in Cates the collateral estoppel effect of the Illinois judgment made a favorable outcome for contestants virtually certain.
The case here undeniably involves hardship on the widow. The trial court frankly stated it wanted to find a way to order family allowance for the widow, who was decedent's wife of 17 years, has monthly living expenses of $6,567, and apparently had no resources outside the probate estate.[2] Moreover, except for a specific bequest of $100,[3] the widow is the sole residuary legatee under the will. Appellant argues the inequity of permitting the estate's assets and income to be tied up indefinitely, leaving the widow without resources, simply by reason of the pendency of unproved claims which assertedly exceed the value of the estate.
Family allowance is a statutory creation intended to provide temporary support to surviving spouse and children pending readjustment and ultimate distribution of the estate. The recipient of family allowance is *1015 not necessarily an heir to the estate or a taker under the will, although in most cases the recipient will be both. It is possible for a widow to obtain a family allowance under section 680 even though she has no rights in the estate. It is also possible for the entire estate to be consumed under section 680, so that creditors and heirs get nothing, and nothing remains to satisfy unproved claims against the estate. Under such circumstances a claimant's right to obtain judgment against the estate would be rendered valueless. Therefore, cases involving family allowance (Murphy and Cates) have applied a rigid definition of insolvency, analogizing to the definition of insolvency under the Uniform Fraudulent Conveyance Act (Civ. Code, § 3439.02, subd. (a)).[4] Under that definition mere pendency of claims against the transferor, however far-fetched, constitutes sufficient evidence to support a finding of probable insolvency for purposes of determining the validity of a conveyance during the pendency of such litigation. (Neumeyer v. Crown Funding Corp. (1976) 56 Cal. App.3d 178, 185 [128 Cal. Rptr. 366]; Babcock v. Omansky (1973) 31 Cal. App.3d 625, 632 [107 Cal. Rptr. 512].) Understandably, the probate court did not wish to assume responsibility for pretrying contested civil actions in an application for family allowance, a summary proceeding which gives the court no ready means to adjust rights of the parties. Accordingly, the trial court acted within its discretion in refusing to evaluate the merits of the civil actions and ruling that the mere pendency of claims in litigation rendered the estate insolvent as a matter of law.
By reason of the paucity of case law interpreting the term "insolvency" in section 680, the court in Murphy discussed a number of cases arising in a related context, that of preliminary distribution. Under sections 1000 and 1001 ff. of the Probate Code (and their predecessor statutes) preliminary distribution of estate assets is authorized if the estate is "but little indebted" and distribution will not jeopardize rights of any creditor or person interested in the estate. Unlike family allowance, partial distribution transfers estate property to its designated owners. Further, distributees of the estate are heirs. If an adverse claimant wins a judgment against the estate, he could probably get a judgment against the distributees individually on the basis of transferee liability.
A preliminary distribution hearing is a more plenary proceeding than an application for family allowance, and the probate court has more options available to it. Preliminary distribution requires an estate *1016 accounting, payment of inheritance taxes, and a showing that no loss to creditors or injury to the estate will result, which contemplates a fairly detailed presentation by the executor and a court hearing of some scope. (See Prob. Code, § 1001.) Further, on preliminary distribution the court may require the distributee to post bond, an alternative not available on an order for family allowance. The bond can provide security for litigants with actions pending against the estate which will take time to present and prove. Accordingly, causes involving preliminary distribution have viewed propriety of preliminary distribution as a question of fact, and the probate court is not required to delay partial distribution because litigation is pending against the estate. In such cases the court is influenced by the well-established maxim that public policy favors speedy distribution of probate estates (Estate of Beach (1975) 15 Cal.3d 623, 641 [125 Cal. Rptr. 570, 542 P.2d 994]; Estate of Dougherty (1951) 101 Cal. App.2d 576 [225 P.2d 613].)
In Estate of Dabney (1951) 37 Cal.2d 672 [234 P.2d 962], the court held that an adverse claimant to estate property is not a creditor of the estate nor one interested therein, and accordingly he may not directly challenge a preliminary distribution, but must seek an injunction from the court trying his lawsuit to prevent distribution of estate assets. The court upheld the discretion of the probate court in allowing preliminary distribution when adverse claims amounted to 25 to 40 percent of assets. The court, clearly influenced by the policy favoring speedy distribution in probate, concluded that the judge trying the adverse action against the estate is in a better position than the probate judge to assess likelihood of success in the civil action.
We think appellant might do well to consider the possibility of preliminary distribution, as in Dabney. Preliminary distribution to the widow would appear proper, in that public policy favors speedy distribution of probate estates, especially where the widow has little outside resources. The court may authorize preliminary distribution despite pending claims, leaving respondents to their remedies on the civil side of the court. If the law and motion department is sufficiently convinced of the merits of respondents' cause and its likelihood of success, it can issue an injunction to prevent preliminary distribution, as happened in Murphy. Moreover, nothing would prevent the probate court conditioning partial distribution on posting of bond or subjecting the estate's real property to a lien for such sums, if any, as respondents might ultimately recover. We note the real property in the estate has *1017 been inventoried at $670,000. Such a procedure would provide ample security for respondents, and make income available to the widow.
The order terminating family allowance is affirmed.
Roth, P.J., and Beach, J., concurred.
A petition for a rehearing was denied May 10, 1977.
NOTES
[1] Section 680: "The surviving spouse, minor children, and adult children who are physically or mentally incapacitated from earning a living and were actually dependent in whole or in part upon the decedent for support are entitled to such reasonable allowance out of the estate as shall be necessary for their maintenance according to their circumstances, during the progress of the settlement of the estate, which, in case of an insolvent estate, must not continue longer than one year after granting letters. Such allowance must be paid in preference to all other charges, except funeral charges, expenses of the last illness and expenses of administration, and may, in the discretion of the court or judge granting it, take effect from the death of the decedent."
[2] The estate generates an annual income of about $75,000. Because it was not clear how much family property was community property and how much was decedent's separate property, all property in which decedent had an interest is in probate, and no joint tenancy property is listed in the inventory. There are no references to life insurance. The petitions for family allowance affirmatively allege that the widow has no resources except Social Security payments of $269 monthly and a pension of $94 monthly.
[3] The widow was decedent's second wife, and decedent was childless.
[4] Civil Code section 3439.02, subdivision (a) reads: "(a) A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."