TRI–CONTINENTAL LEASING CORP., INC., a corporation, Plaintiff,

v.

J. Gene ZIMMERMAN, an Individual, Esther J. Zimmerman, an Individual, and Northern California Conference Association of Seventh Day Adventists, a corporation, Defendants.

No. C–79–2009.

United States District Court, N. D. California.

March 4, 1980.

Dinkelspiel & Dinkelspiel, San Francisco, Cal., for plaintiff.

Mandich, Clark & Barker, Sacramento, Cal., for defendants.

## ORDER

WOLLENBERG, District Judge.

Plaintiff Tri-Continental Leasing Corp., Inc. brought this action in order to set aside as a fraudulent conveyance the transfer of certain real property by defendants Gene and Esther Zimmerman to defendant Northern California Conference Association of Seventh Day Adventists (the "Church"). The matter is presently before the Court for determination of the Zimmermans' motion to set aside the entry of default judgment and plaintiff's request that the Court enter final judgment.

Plaintiff filed the complaint herein on August 2, 1979. Upon the Zimmermans' failure to respond to the complaint, plaintiff requested on September 17, 1979, the entry of default against them. On the next day, the clerk entered the default. Approximately one month later, the Zimmermans filed a motion to set aside default and vacate judgment pursuant to Rule 60(b), Fed. R.Civ.P. They based their motion on the argument that their failure to file a timely answer resulted from the excusable neglect of their attorney who in August and September of 1979 had suffered from an incapacitating mental condition. Defendants submitted affidavits in support of this contention. On the date of the hearing, defendants attempted to submit additional materials in support of their motion. Despite the untimeliness of this offer and the fact that defendants had improperly brought their motion under Rule 60(b) as opposed to Rule 55(c), Fed.R.Civ.P., the Court accepted these materials and permitted both parties to file supplementary memoranda. Finally, it should be noted that defendant Church has stipulated to judgment in favor of plaintiff.

■ A motion to set aside an entry of default is addressed to the sound discretion of the trial judge. *Madsen v. Bumb,* 419 F.2d 4, 6 (9th Cir. 1969). Under Rule 55(c), "[f]or good cause shown the court may set aside an entry of default." The showing of good cause contains two components. The movant must establish a good reason for setting aside the default analogous to the grounds for relief from judgment under Rule 60 and show the existence of a meritorious defense. *See Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970); *Madsen v. Bumb,* 419 F.2d at 6; 6 Moore's Federal Practice ¶ 55.10[1] (2d ed. 1976). Defendants have met the first showing. The affidavits that they have submitted attesting to the illness of their previous attorney provide a sufficient basis for finding a good reason for setting aside the entry of default. Defendants have failed, however, to establish properly the existence of a meritorious defense.

■ Because the preferred disposition of any case is upon the merits, the showing of a meritorious defense does not involve a heavy burden of proof. Thus, a party seeking to set aside a default need not prove his defense by a preponderance of the evidence. *Central Operating Co. v. Utility Workers Union of America,* 491 F.2d 245, 252 n. 8 (4th Cir. 1974). Rather, that party only carries the burden of producing competent evidence that establishes a factual or legal basis for the tendered defense. *See id.; Gomes v. Williams,* 420 F.2d at 1366; *Madsen v. Bumb,* 419 F.2d at 6. Contrary authority indicating that the party in default need only allege a meritorious defense, *see, e. g., Rasmussen v. W. E. Hutton & Co.,* 68 F.R.D. 231 (N.D.Ga.1975), must be disregarded in the face of the cited decisions of the higher courts. Such a rule would over emphasize the policy of disposing of cases on the merits at the expense of the counterbalancing considerations of judicial economy and efficiency.

■ The application of these standards to the case at hand finds that the meritoriousness of the Zimmermans' defense hinges upon a single issue. In this diversity case in which state law controls the substantive matter, plaintiff's claim for relief is based upon two different sections of the Uniform Fraudulent Conveyance Act ("the Act"), Cal.Civ.Code §§ 3439, *et seq.* (West 1970). The complaint alleges that the Zimmermans conveyed the property at issue to the Church with the actual intent to defraud their creditors and that the conveyance rendered the Zimmermans insolvent. The former allegation of actual fraud provides grounds for relief under section 3439.07 while the latter allegation of constructive fraud falls within the scope of section 3439.-04. Because the question of actual intent brings into issue the Zimmermans' states of mind at the time of the conveyance, Mr. Zimmerman's sworn declaration in which he denies that their actions were tainted with any fraudulent intent constitutes, for purposes of their present motion, competent evidence necessary to support their defense that they lacked the intent required under section 3439.07.

■ Similar conclusory allegations, however, do not provide sufficient substantiation for their tendered defense to the claim for relief based upon constructive fraud. Under section 3439.04, every conveyance without fair consideration by a person who is or will be thereby rendered insolvent is fraudulent without regard to actual intent. The Zimmermans admit that the conveyance was without fair consideration but claim that they were solvent both before and after the conveyance. The question of their solvency—unlike the issue of actual intent—rests solely upon purely objective considerations. Under the Act, a person is insolvent when the present fair saleable value of his nonexempt assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. Cal. Civ.Code § 3439.02; *see, e. g., Miller v. Keegan,* 92 Cal.App.2d 846, 852, 207 P.2d 1073, 1076 (2d Dist.1949). Thus, the determination of this motion depends upon the sufficiency of the evidence defendants have produced concerning this question.

Complicating the determination of this matter is the fact that defendants, despite having gained the reluctant permission of the Court to file untimely affidavits and memoranda, have wholly failed to address their arguments to the statutory scheme at issue. As noted above, the Act's definition of insolvency involves measuring at the time of the conveyance the fair saleable value of nonexempt assets against probable liability on existing debts as they become absolute and matured. Nowhere in their papers have defendants made an attempt to present any type of informal balance sheet computing these figures; nor have they presented the evidence from which such calculations could be made. Instead, defendants have offered the Court haphazardly presented allegations concerning their assets and liabilities at the time of the conveyance without any attempt to substantiate these claims or present estimates of the saleable value of these assets. Furthermore, defendants have either ignored or misconstrued the statutory definition of insolvency. They contend that after the conveyance, they had sufficient assets on hand to keep current with their "just debts." *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Set Aside Default at 4; Further Affidavit of J. Gene Zimmerman at 2. This argument improperly focuses upon one of the traditional definitions of insolvency instead of utilizing the formula found in section 3439.02. Finally, defendants also fail to recognize that all debts,—not simply "just debts,"—whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent, are considered existing debts for purposes of determining insolvency. *See* Cal.Civ. Code §§ 3439.01 & 3439.02.

In light of the inappositeness of defendants' arguments but seeking to give due deference to the policy of disposing of cases upon the merits, the Court has carefully searched the record for competent evidence substantiating the Zimmermans' defense of solvency. The record indicates the follow-

ing facts. At the time of the conveyance, the Zimmermans had extensive liabilities deriving from the leasing of four computers from four separate leasing companies. The computers ranged in price from $185,000 to $235,000. The Zimmermans allege that two of the leases were secured by real property valued well in excess of the terms of the leases and that the other two leases were secured by the computer that was the subject of the lease. Mr. Zimmerman alleges that in 1978 he had a before-tax income exceeding $150,000. The Zimmermans' only other assets consisted of an assignment of accounts receivable in the amount of $110,-000 from a corporation owned by a sales representative of the vendor corporation of the computers. The Zimmermans had contributed their remaining assets to defendant Church. Sometime before the conveyance at issue, the Zimmermans had stopped making their monthly payments on, at least, the two leases secured by the computers. Plaintiff, whose status as a judgment creditor derives from a previous case in this Court based upon its purchase of and lease to the defendants of one of the unsecured computers, has also noted that testimony of Mr. Zimmerman at his post-judgment examination contradicts his present allegations regarding the amount of his 1978 income and the actual value of the real property securing the other two leases.

■ The Zimmermans' extensive liabilities at the time of the conveyance places a difficult burden upon them in proving their defense. The general rule in these cases creates a presumption of solvency. *See Hansford v. Lassar,* 53 Cal.App.3d 364, 375, 125 Cal.Rptr. 804, 810 (2d Dist.1976); *T W M Homes, Inc. v. Atherwood Realty & Investment Co.,* 214 Cal.App.2d 826, 847, 29 Cal.Rptr. 887, 899 (1st Dist.1963). An exception to that rule, however, reverses the presumption when the evidence shows significant indebtedness existing at the time of a conveyance made without fair consideration. *See Neumeyer v. Crown Funding Corp.,* 56 Cal.App.3d 178, 190, 128 Cal.Rptr. 366, 373 (1st Dist.1976). The evidence of the Zimmermans' extensive liabilities on the leases thus gives rise to the presumption that their conveyance was fraudulent.

■ More important is the fact that all of the evidence before the Court supports this presumption. The only reasonable conclusion that can be drawn from the record is that immediately after the conveyance, the Zimmermans' liabilities on their then-existing debts exceeded the fair saleable value of their nonexempt assets. A brief discussion of the proper calculation of the Zimmermans' liabilities and assets at the time of the conveyance will demonstrate the validity of this determination.

■ As has been noted previously, the Act employs an extremely broad definition of "existing debts" for purposes of determining the solvency of a grantor. Section 3439.01 defines debts as including all claims whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent. Under the Act the amount of an unmatured debt or claim that is to be attributed to probable liability in the insolvency calculation is the amount of those debts as they become absolute and matured. Cal.Civ.Code § 3439.02. Admittedly, the wording of the statute pertaining to the calculation of unmatured claims at the time of the transfer is less than clear. But the statute's broad definitions of debt and creditor and the peculiar wording of the definition of insolvency leave no doubt that in computing the total liabilities on then-existing debts, the trier of fact must estimate the ultimate amount of a contingent claim at its maturity without regard to the merits of the claim and without regard to the fact that at the time of the conveyance some portion of the debt may have matured. Under the Act, therefore, pending lawsuits must be treated as existing debts. Applying these principles to the case at hand, the Zimmermans' then-existing debts must be viewed as including the probable ultimate liability on claims arising out of the computer leases assuming that such claims were to mature, rather than just the portions of those claims that had matured at the time of the conveyance.

Despite the apparent verbal difficulties encountered in presenting this explication

of the calculation of liabilities for purposes of determining insolvency under the Act, the case law has uniformly followed this interpretation. In *Babcock v. Omansky*, 31 Cal.App.3d 625, 632, 107 Cal.Rptr. 512, 517 (2d Dist.1975), the defendant, challenging a finding of insolvency, contended that the trial court should not have admitted into evidence proof of the existence of lawsuits pending at the time of his allegedly fraudulent conveyance. The court rejected this argument noting that under the Act this evidence bore directly upon the issue of his probable insolvency at the time of the transfer. The fact that the lawsuits might have later proved to be unfounded would not have altered this decision. *See id.* The court similarly held in *Neumeyer v. Crown Funding Corp.*, 56 Cal.App.3d at 189, 128 Cal.Rptr. at 373, that liabilities that had not matured as of the date of the conveyance at issue therein were to be considered in determining the solvency issue. The same court of appeals has cited these two cases in support of the proposition that under the Act, "the mere pendency of claims against the transferor, however farfetched, constitutes competent evidence to support a finding of probable insolvency." *In re Estate of Anderson*, 68 Cal.App.3d 1010, 1015, 137 Cal.Rptr. 727, 730 (2d Dist.1977).

The Act also authorizes the Court to look to decisions in other jurisdictions in order to effectuate the purpose of making the law uniform. *See* Cal.Civ.Code § 3439.12; *Neumeyer v. Crown Funding Corp.*, 56 Cal. App.3d at 187, 128 Cal.Rptr. at 372. Those decisions also utilize the analysis adopted herein. In *Baker v. Geist*, 457 Pa. 73, 321 A.2d 634 (1974), the court held that the mere assertion of a claim for personal injuries arising out of an automobile accident constitutes an existing debt even prior to the filing of a lawsuit. The court apparently looked to the amount of the ultimate judgment for its estimate of the probable liability on the debt at the time of the conveyance. *See also Continental Bank v. Marcus*, 242 Pa.Super.Ct. 374, 363 A.2d 1318 (1976) (applying *Baker* to a related set of facts). Finally, in *Davis v. Nielson,* 9 Wash. App. 864, 515 P.2d 995 (Div. 1 1973), the court held that in determining defendant's insolvency, a debt on certain notes had to be considered notwithstanding the fact that the statute of limitations had run on the notes. The court reasoned that since the statute of limitations is an affirmative defense, the notes were existing debts under the Act's broad definitions.

The reasoning underlying these interpretations of the Act is clear. The Act's broad definitions conclusively indicate that its authors intended that the Act prevent both debtors and potential debtors from defrauding their creditors and potential creditors. The courts have thus construed the Act as providing recourse against persons who faced with claims on their assets—whether those claims be absolute or contingent—dispose of their assets without receiving further assets from which the claims may be satisfied. The means of calculating liabilities employed herein and in the cited cases insures the effectuation of this intended, salutary operation of the Act.

▮▮▮ Thus, at the time of the conveyance, the Zimmermans' existing debts included their ultimate potential liability on the four computer leases. Assuming for purposes of this decision the validity of their claim that two of the leases were fully secured by real property, they still had at that time approximately $400,000 of liability on the two remaining leases. The Court must reject their contention that they could have properly assumed at the time of the conveyance that, as provided by contract, the computers adequately secured these leases. The Zimmermans have presented no evidence concerning the value of the computers or the effect of these contract provisions. By these arguments, the Zimmermans presumably seek to relitigate issues determined in previous litigation. While it is true that under the Act the solvency of a grantor must be measured at the time of the conveyance, *see T W M Homes, Inc.*, 214 Cal.App.2d at 847, 29 Cal. Rptr. at 899, by the time of their conveyance, pending litigation against the Zimmermans had fully informed them that their creditors were seeking the full value

of these leases and ascribing no value to the computers. In view of the above discussion pertaining to the calculation of existing debts for purposes of applying section 3439.-04, the then-pending status of these claims requires that the full amount of the leases be included in the calculation of the Zimmermans' liabilities.

 Finally, the Zimmermans have failed to allege that the then-existing fair saleable value of their nonexempt assets exceeded the sum of $400,000. In fact, the evidence shows the contrary. Mr. Zimmerman claims to have barely had the financial capacity to make the monthly payments to the two companies holding the leases: "The payments on the other two companies, while they would have exhausted my income above bare living expenses, could have been made with all my just debts." Further Affidavit of J. Gene Zimmerman at 2. The possession of sufficient assets to pay present debts as they mature, however, does not satisfy the Act's definition of insolvency. *See T W M Homes, Inc.,* 214 Cal.App.2d at 814, 29 Cal.Rptr. at 899. The only nonexempt assets that the Zimmermans had on hand—they had given their other property to the Church—included the nonexempt portion of Mr. Zimmerman's income and the $110,000 of accounts receivable that they held from the corporation owned by a sales representative of the vendor corporation of the computers. Once again, the Zimmermans have failed to present any evidence concerning the fair saleable value of the latter assets. The present insolvency of the two corporations probably explains the absence of such evidence. Regardless of this fact, it is clear that the saleable value of their total nonexempt assets was far less than the amount of their liabilities.

Defendants have failed to tender a meritorious defense in support of their motion to set aside the entry of default. Viewing this failure in conjunction with the fact that the Court has accorded the Zimmermans ample opportunity to produce competent evidence in support of their defense and that defendant Church has stipulated to judgment, the Court has decided that the policies of judicial economy and efficiency mandate the dismissal of this case.

ACCORDINGLY, IT IS HEREBY ORDERED that defendants' motion to set aside the entry of default is DENIED. Judgment in favor of plaintiff shall be issued herewith.