**In re CURRY & SORENSEN, INC., a California corporation, Debtor.**

**Lawrence A. DIAMANT, Chapter 7 Trustee for Curry & Sorensen, Inc., a California corporation, Appellant,**

**v.**

**Walter T. HANSEN, Donald F. Rau and Ross H. Buckwalter, Appellees.**

**BAP No. CC–89–1229 VPJ.**

**Bankruptcy No. LA 84–07761–GM.**

**Adv. No. LA 84–50999–GM.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Sept. 20, 1989.

Decided Feb. 26, 1990.

Amended April 3, 1990.

Bennett L. Spiegel, Levene & Eisenberg, Los Angeles, Cal., for appellant.

J. Randall Faith, Newman & Faith Inc., Covina, Cal., for appellees.

Before VOLINN, PERRIS and JONES, Bankruptcy Judges.

## AMENDED OPINION

VOLINN, Bankruptcy Judge:

### FACTS

Walter T. Hansen, Donald F. Rau, and Ross H. Buckwalter ("Defendants"), were shareholders of the debtor Curry & Soren-

sen, Inc. ("the Corporation"), from 1955 until July 1, 1978, when they sold their interests in the Corporation to Kenneth Finn. That sale was part of a transaction in which (1) Mr. Finn purchased 10 percent of the Defendants' shares for $60,000, to be paid over time pursuant to several promissory notes ("the Finn Notes"), (2) the Corporation itself purchased 90 percent of the Defendants' shares for $540,000, also to be paid over time pursuant to several promissory notes ("the Corporate Notes"), and (3) the Corporation and the Defendants entered into "employment contracts" which provided for payments over time totalling $1,693,000 by the Corporation to or on behalf of the Defendants.

The ostensible consideration for the employment contracts consisted of consulting services to be provided to the Corporation by the Defendants, and the Defendants' agreements not to compete with the Corporation. The court below found, however, that none of the parties contemplated that the Defendants would provide any services or value to the Corporation on account of the employment contracts, but rather that the payments under them constituted in reality a portion of the purchase price paid for the Defendants' shares in the Corporation.

The Corporation paid approximately $1,614,222.98 to the Defendants under the Corporate Notes and the employment contracts (collectively referred to herein as "the Contracts") between 1978 and March of 1983, but has made no payments on them since March of 1983. Neither the Finn Notes nor any payments on them are at issue in this appeal.

## PROCEDURAL BACKGROUND

This bankruptcy case was commenced on April 6, 1984. On May 8, 1984, the Corporation, as debtor-in-possession under chapter 11 of the Bankruptcy Code, initiated this adversary proceeding on behalf of the estate against the Defendants, seeking under a variety of theories to recover all or a portion of the payments described in the previous paragraph. At issue in this appeal is the estate's claim under the California version of the Uniform Fraudulent Conveyance Act, Cal.Civ.Code §§ 3439–3439.12 (West 1970) (repealed 1986) (hereinafter referred to as "UFCA"). That claim covers those payments made by the Corporation to the Defendants between April of 1981 and March of 1983, which payments shall hereinafter be referred to in aggregate as "the transfers."

After a two-day trial, the court below ruled that every element necessary to prove that claim had been proved except the Corporation's insolvency at the time of or as a result of the transfers. On that issue, the debtor-in-possession had offered evidence that the Corporation was insolvent at the time of the transfers if the obligations under the Contracts are counted as liabilities of the Corporation. The same evidence suggests that the Corporation was solvent at the time of the transfers if the Contracts are not counted as liabilities of the Corporation.

The court below concluded that the Contracts were unenforceable obligations of the Corporation because the Corporation received no consideration for them (neither party has appealed this finding). The court ruled that because the Contracts were unenforceable, they were not eligible for inclusion in the solvency analysis, and as a result that the estate had failed to sustain its burden of proof on the issue of the Corporation's insolvency.

Lawrence A. Diamant ("the Trustee"), chapter 7 trustee for the Corporation, became the Corporation's successor in interest in the adversary proceeding after conversion from chapter 11 to chapter 7.[1] The Trustee appeals the adverse ruling in the adversary proceeding, arguing that even if the Contracts were not enforceable, as a matter of law they nonetheless should have been included as debts in the solvency analysis. The Trustee also argues that the estate should not have had the burden of

---

**1.** The record reflects that the case was converted after trial, but before this appeal was initi-   ated.

proving insolvency, but rather that the presumption of solvency should have shifted to one of insolvency, shifting the burden of proof to the Defendants.

## ISSUES

1. Should the Corporation's obligation under the Contracts have been included in the solvency analysis under the UFCA?

2. Did the court below err in ruling that the estate's claims must fail because it failed to sustain its burden of proving the insolvency of the Corporation at the time of the transfers?

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact under a "clearly erroneous" standard, and its conclusions of law *de novo*. *In re Wolf & Vine*, 825 F.2d 197, 199 (9th Cir.1987).

## DISCUSSION

■ One of the elements necessary to the estate's claim is that there was no "fair consideration" given in return for the transfers. UFCA § 3439.04. Under the UFCA, "fair consideration" is given when antecedent debt is satisfied.[2] UFCA § 3439.03(a). The bankruptcy court correctly concluded, however, that because the Contracts lacked consideration and thus were unenforceable as against the Corporation, their partial satisfaction was not fair consideration for the transfers. *Hansen v. Cramer*, 39 Cal.2d 321, 324, 245 P.2d 1059, 1060 (1952). However, to establish its claim under the UFCA the estate must also prove that the Corporation was insolvent at the time of or as a result of the transfers.[3] UFCA § 3439.04. This places the Trustee on the horns of a dilemma. If the Contracts were valid, then insolvency can be established, but the estate's claims fail because there was "fair consideration" for the transfers. On the other hand, if the Contracts were invalid, then the transfers lacked consideration, but insolvency cannot be established (as the bankruptcy court found).

In an effort to escape this impasse, the Trustee argues that although the Contracts are deficient as "fair consideration" for the transfers, nevertheless, they are sufficiently substantive to be counted as debts for the purposes of the insolvency analysis. This is the central issue in this appeal.

### A. Inclusion of Contracts in Solvency Analysis

■ In support of his position, the Trustee cites several cases holding that unliquidated or otherwise uncertain debts should be counted as liabilities in determining insolvency in the context of fraudulent conveyance analysis. *See Tri–Continental Leasing Corp. v. Zimmerman*, 485 F.Supp. 495 (N.D.Cal.1980); *In re Estate of Anderson*, 68 Cal.App.3d 1010, 137 Cal. Rptr. 727 (1977); *Babcock v. Omansky*, 31 Cal.App.3d 625, 107 Cal.Rptr. 512 (1973); *Neumeyer v. Crown Funding Corp.*, 56 Cal.App.3d 178, 128 Cal.Rptr. 366 (1976). In *Tri–Continental*, the court ruled that the transferor's debts "must be viewed as including the probable ultimate liability on claims" existing at the time of the transfer in question. 485 F.Supp. at 499. In *Anderson*, the court declined to ignore or prejudge the potential liability on a civil action that was active and pending in a different court. 68 Cal.App.3d at 1015, 137 Cal.Rptr. at 730–31. In *Babcock*, the court held that it was not error to include a contested debt in the insolvency determination even though the transferor was later found to be only partially liable on the contested debt; the court held that the relevant inquiry was as to the "probable" liability. 31 Cal.App.3d at 632, 107 Cal. Rptr. at 517. Finally, in *Neumeyer*, the court held that debts were not excluded from the insolvency analysis merely be-

---

**2.** This is analogous to § 548 of the Bankruptcy Code, which also provides for the recovery of fraudulent transfers. In the absence of actual fraud, § 548(a)(2)(A) requires that the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."

Section 548(d)(2)(A) provides that "value" includes the satisfaction of antecedent debt of the debtor.

**3.** Again, this is analogous to § 548. *See* 11 U.S.C. § 548(a)(2)(B)(i).

cause they had not matured as of the date of the transfer. 56 Cal.App.3d at 189, 128 Cal.Rptr. at 373.

The premise in each of these cases was that at the time of the solvency analysis, there was the genuine possibility that the transferor could be held liable on the debt in question, in which event the transferor's liability on the challenged debt would establish insolvency. Thus, potential liability on a debt renders it eligible for consideration in the analysis of the insolvency element necessary to a fraudulent conveyance claim.

In the case before us, validity of the Contracts would defeat the estate's claims by establishing consideration for the transfers. Thus, the Trustee cannot argue even potential liability on the Contracts because he must establish their invalidity in order to establish the estate's claim. In any event, the foregoing cases are rendered inapposite by the bankruptcy court's final and unappealed ruling that the Contracts were unenforceable for lack of consideration.

This result is consistent with the purpose of the UFCA. If the Contracts were enforceable, then payments on them to the Defendants were not fraudulent, and did not prejudice any creditors.[4] On the other hand, if the Contracts were unenforceable, then the evidence suggests that the Corporation was solvent in 1983 after the transfers, in which case the Corporation's creditors were not prejudiced either by the transfers or by the existence of the unenforceable Contracts.

The Trustee correctly observed that even if the Contracts lacked consideration, they could be enforceable on other grounds, such as promissory estoppel. In that case, the Trustee argues, the transfers lacked consideration, but the Contracts still must be counted in the insolvency analysis. This argument confuses the Contracts themselves with the payments made on them. Even though the Contracts themselves lacked consideration, if they are enforce-

able for any reason, then they can serve as fair consideration for payments made under them. The Trustee's recourse would be to attack as a fraudulent transfer the initial creation of the debt under the Contracts, which he has not done in this case.

Contrary to the Trustee's contention, this holding does not allow the immunization of an otherwise fraudulent conveyance by first creating an unenforceable debt to serve as consideration for the transfer in question. The court below found and the Trustee conceded in oral argument that if the Contracts are not considered, the Corporation was neither insolvent at the time of the transfers nor rendered insolvent by them. Thus in the absence of the Contracts, the transfers would not have been avoidable as fraudulent conveyances.

**B.  Burden of Proof of Insolvency**

■ The bankruptcy court held that there is a presumption of solvency under the UFCA, and therefore that the estate had the burden of proving that the Corporation was insolvent at the time of or as a result of the transfers. The bankruptcy court went on to hold that in light of the presumption of solvency, and the exclusion of the Contracts from the solvency analysis, the estate failed to sustain that burden. The bankruptcy court did *not* make a factual finding that in the absence of the solvency presumption, the Corporation was solvent at the time of the transfers. Thus the ruling before the panel depends on the propriety of the presumption of solvency.

The Trustee concedes that as plaintiff the estate initially bears the burden of proof of insolvency, but argues that the burden of proof issue should have shifted to the Defendants in light of the evidence he presented. In support of his position, the Trustee cites *Neumeyer v. Crown Funding Corp.*, 56 Cal.App.3d 178, 128 Cal.Rptr. 366 (1976), and *Tri–Continental Leasing Corp. v. Zimmerman*, 485 F.Supp. 495 (N.D.Cal.1980). In *Neumeyer*, the transferor was unavailable to provide any information as to his solvency, and in fact

---

**4.**  Whether the transfers preferred certain unsecured creditors over others was not an issue in this appeal, presumably because the transfers

occurred more than one year before the bankruptcy and therefore were not avoidable under § 547 of the Bankruptcy Code.

had not been seen by any of the parties for several years. 56 Cal.App.3d at 182, 128 Cal.Rptr. at 368. The plaintiff had, however, presented "considerable evidence concerning [the transferor]'s liabilities" at the time of the transfer, and also established that the transfer in question had been made without consideration. 56 Cal.App.3d at 186, 190, 128 Cal.Rptr. at 371, 373. The court agreed that in light of the evidence indicating the fraudulent nature of the transfer, and the impossibility of the plaintiff sustaining the burden of proving insolvency because of the disappearance of the transferor, the burden of proof shifted to the defendants. 56 Cal.App.3d at 190, 128 Cal.Rptr. at 371, 373.

The facts of *Neumeyer* distinguish it from the case at bar. In *Neumeyer* there was no evidence of solvency, but there was evidence strongly suggesting insolvency and it would have been impossible for the plaintiff to produce additional evidence conclusively proving insolvency. In the case at bar, however, the evidence (excluding the Contracts) favors solvency. Furthermore, the debtor-in-possession was obviously in at least as good a position to offer evidence on the issue of its own insolvency as were the Defendants, who have been removed from the corporate affairs for the past 11 years.

*Neumeyer* also cites cases from New York, Maryland, and Pennsylvania for the proposition that in those states the burden of proof can shift to the defendant when the plaintiff shows evidence of a lack of consideration for the transfer, and evidence of significant debts of the transferor at the time of the transfer. *See* 56 Cal.App.3d at 187–89, 128 Cal.Rptr. at 372–73, and cases cited therein. *Neumeyer* acknowledges but distinguishes a California case, *Miller v. Keegan,* 92 Cal.App.2d 846, 207 P.2d 1073 (1949), however, which held that the presumption of solvency did not shift because the plaintiff in that case had failed even to make a *prima facie* showing of insolvency. 56 Cal.App.3d at 189, 128 Cal. Rptr. at 373. Thus, the *Neumeyer* court's application of cases from other jurisdictions appears to rely on the court's inference that the plaintiffs in those cases had made

a *prima facie* showing of insolvency. In the case at bar, the only evidence in the record indicates solvency (excluding the Contracts). Thus there has been no *prima facie* showing of insolvency, and even under the *Neumeyer* reasoning the burden of proof must remain with the Trustee.

The *Tri–Continental* case is also distinguishable on its facts. In that case, a default had been taken against the defendants, and in order to set aside the default, the defendants were required to "show the existence of a meritorious defense." 485 F.Supp. at 497. Thus the default shifted the burden of proof to the defendants. Furthermore, the defendants had failed to present any evidence whatsoever from which a solvency calculation could be made, while the only evidence in the record indicated that immediately after the transfers the defendants' debts exceeded the value of their assets, and that they had stopped making the payments due on their regular periodic obligations. 485 F.Supp. at 498–99.

In the case before this panel, the balance sheets and testimony before the trial court indicated that without considering the liability on the Contracts, the Corporation was solvent at the time of the transfers. Thus there is no *prima facie* showing of insolvency, and no lack of evidence of solvency, and therefore the cases cited in support of shifting the presumption of solvency to one of insolvency are inapposite. The estate is therefore subject to the general rule imposing on it the burden of proving that the transferor was insolvent at the time of or as a result of the transfers it seeks to avoid.

## CONCLUSION

The trial court properly excluded the Contracts from the analysis of the Corporation's insolvency at the time of the payments to the Defendants. The trial court also properly placed the burden of proving insolvency on the estate, and the finding that the estate had not sustained that burden of proof was not clearly erroneous.

The ruling of the trial court is therefore AFFIRMED.