10 Cal.App.4th 630 (1992)
12 Cal. Rptr.2d 751
Estate of PAUL M. HERRERA, Deceased.
MARIE HERRERA, Petitioner and Appellant,
v.
FARRELL CONSTRUCTION COMPANY, INC., Objector and Respondent.
Docket No. A055872.
Court of Appeals of California, First District, Division Four.
October 21, 1992.
*631 COUNSEL
Williams & Martinet, Zenobia Lal-Wadia and Leonard J. Martinet for Petitioner and Appellant.
*632 Carr, Smulyan & Hartman, George M. Carr and Leslie M. Hartman for Objector and Respondent.
OPINION
POCHE, Acting P.J.
Probate Code section 6540, subdivision (b)(2) provides in pertinent part: "A parent of the decedent who was actually dependent in whole or in part upon the decedent for support ... may be given such reasonable family allowance out of the estate as the court in its discretion determines is necessary for [his or her] maintenance according to [his or her] circumstances during administration of the estate."[1] We hold that the probate court did not abuse the discretion granted by this statute when it denied a parent's application for a family allowance solely in order that a judgment creditor of the estate could be paid.

BACKGROUND[2]
The decedent, Paul M. Herrera, died intestate in December of 1987 without wife or issue. His mother, Marie Herrera, was appointed administrator of his estate.
Upon petition of an unsatisfied judgment creditor of the estate, and because Mrs. Herrera had failed to submit an accounting as ordered, the probate court suspended her powers as administrator. The court subsequently removed Mrs. Herrera from that position and found her liable for the amount of the creditor's judgment.
In June of 1991, after this creditor had its claim satisfied, another judgment creditor, Farrell Construction Company, Inc. (Farrell), moved to have Mrs. Herrera surcharged for the amount of its claim  approximately $10,000 plus nine months of accrued interest[3]  against the estate. Two days later Mrs. Herrera filed a verified petition for a family allowance of $1,000 per month, retroactive to January 1, 1988, for the support of herself and her husband, Ralph Herrera, the decedent's father. Farrell alone objected on the grounds that, among other things, (1) Mrs. Herrera had not shown that the financial needs of herself and her husband could not be met from other *633 sources, and (2) "There may be insufficient property, money or income of the estate ... for the payment of any family allowance."
The basis for Farrell's second objection became apparent when Mrs. Herrera filed an accounting for the period she had been the estate's administrator. Mrs. Herrera sought the court's approval for slightly more than $20,000 of estate funds that had already been "[u]tilized on a monthly basis by decedent's parents for basic living expenses to replace support given by decedent prior to his death." If these expenditures were judicially ratified, there would not be sufficient estate assets to pay the family allowance sought by Mrs. Herrera (and certainly not enough to satisfy Farrell's judgment). Farrell objected to this item of Mrs. Herrera's account, and asked that she be surcharged for it as well as the amount of Farrell's judgment.
The account, the motion for surcharge, and the petition for the family allowance were argued and decided together in September of 1991. During the course of the hearing the probate court was advised that the estate had assets of only about $2,000. Mrs. Herrera's account was approved except for the $20,000 she had withdrawn for living expenses; she was surcharged for this amount. As to the requested family allowance, the court's ruling was made in these terms: "I'm not going to award a family allowance at this time. If there's more in the estate, that might make it a different story. But I don't think that  Under the circumstances, I think this creditor [i.e., Farrell] should be paid. If it can't be paid in full, I think after seeing the accounting, it's obvious that just $20,000 was taken without any Court order, and it's possible that I might award something. But it seems to me this creditor should be paid under the circumstances. So I'll deny the family allowance at this time."
Mrs. Herrera appeals only from the ensuing written order denying her petition for a family allowance. That order is appealable. (§ 7240, subd. (e).)

REVIEW
Unknown at common law, the family allowance is the exclusive creature of statute. (Hills v. Superior Court (1929) 207 Cal. 666, 667 [279 P. 805, 65 A.L.R. 266]; Estate of Silverman (1967) 249 Cal. App.2d 180, 183 [57 Cal. Rptr. 379, 27 A.L.R.3d 856].) The necessary statutory authorization for the family allowance has been a feature of California law since the earliest days of statehood. Originally provided only for surviving wives and minor children (see Stats. 1850, ch. 129, §§ 121-124, pp. 386-387; Stats. 1851, ch. 124, §§ 120-123, pp. 462-463), allowances were subsequently extended to surviving husbands (Stats. 1951, ch. 1089, § 1, p. 2823), to "adult children *634 who have been declared incompetent" (Stats. 1953, ch. 1215, § 1, p. 2772), and then to "adult children who are physically or mentally incapacitated from earning a living and were actually dependent in whole or in part upon the decedent for support" (Stats. 1972, ch. 569, § 1, p. 973).
(1) These are what may be called mandatory allowances.[4] Their purpose is to ease the economic hardship presumably suffered by those whom the decedent either had a duty to support or actually provided support, during the period from the decedent's death until distribution of the estate. (See e.g., Estate of Brooks (1946) 28 Cal.2d 748, 755 [171 P.2d 724]; Estate of Anderson (1977) 68 Cal. App.3d 1010, 1014 [137 Cal. Rptr. 727]; Estate of Jacobs (1943) 61 Cal. App.2d 152, 155-156 [142 P.2d 454].) By virtue of this humane purpose, and because they have priority over most other debts, charges, and liabilities of the estate (see § 11420, quoted at fn. 5, post), these family allowances are said to enjoy a "highly preferential position" (Estate of Blair, supra, 42 Cal.2d 728 at p. 730) and to be "`strongly favored in the law.'" (Estate of Filtzer (1949) 33 Cal.2d 776, 783 [205 P.2d 377] [citing and quoting Estate of Jacobs, supra, at p. 155].)
In 1982 the Legislature introduced a new category of recipients  "Other adult children who were actually dependent in whole or in part upon the decedent for support"  who could be granted "such reasonable allowance out of the estate as the court in its discretion determines is necessary for their maintenance according to their circumstances during the progress of the settlement of the estate." (Former § 680, subd. (b); Stats. 1982, ch. 520, § 6, p. 2444.) As part of a massive reorganization of the Probate Code enacted in 1983, the Legislature adopted a proposal from the Law Revision Commission (Tent. Recommendation Relating to Wills and Intestate Succession (Nov. 1982) 16 Cal. Law Revision Com. (1982) pp. 2301, 2341-2342) and added dependent parents as possible discretionary recipients of a family allowance. (Stats. 1983, ch. 842, § 55, p. 3088.)
The statute presently governing both mandatory and discretionary family allowances is section 6540, which provides:
"(a) The following are entitled to such reasonable family allowance out of the estate as is necessary for their maintenance according to their circumstances during administration of the estate:
*635 "(1) The surviving spouse of the decedent.
"(2) Minor children of the decedent.
"(3) Adult children of the decedent who are physically or mentally incapacitated from earning a living and were actually dependent in whole or in part upon the decedent for support.
"(b) The following may be given such reasonable family allowance out of the estate as the court in its discretion determines is necessary for their maintenance according to their circumstances during administration of the estate:
"(1) Other adult children of the decedent who were actually dependent in whole or in part upon the decedent for support.
"(2) A parent of the decedent who was actually dependent in whole or in part upon the decedent for support.
"(c) If a person otherwise eligible for family allowance has a reasonable maintenance from other sources and there are one or more other persons entitled to a family allowance, the family allowance shall be granted only to those who do not have a reasonable maintenance from other sources."
(2a) The essence of Mrs. Herrera's position is that the probate court erred in refusing a family allowance for herself and her husband in order that Farrell's judgment could be satisfied from the estate's limited funds. Her supporting arguments, incorporating an impressive array of established principles governing family allowances, proceed along these lines: When presented with a request by a qualified applicant for a family allowance, the probate court has no discretion to deny the request (see Estate of Baldwin (1961) 190 Cal. App.2d 78, 80 [11 Cal. Rptr. 604]; Estate of Secord (1948) 84 Cal. App.2d 783, 785-786 [192 P.2d 81]; but see fn. 4, ante), which "must be granted." (Estate of Blair, supra, 42 Cal.2d 728 at p. 730.) In conformity with the payment hierarchy established by statute,[5] family allowances have priority over creditors' claims even when reduced to judgment. (See Estate of *636 Secord, supra, at pp. 786-787; Estate of Ettlinger (1943) 56 Cal. App.2d 603, 604-605 [132 P.2d 895].) The probate court has no authority to alter this preference. (See Estate of Black (1976) 65 Cal. App.3d 112, 117 [135 Cal. Rptr. 115].) A family allowance is not lost by either delay in seeking it, or by the fact that the applicant has previously received estate funds from the estate's administrator without proper authorization. (See Estate of Fretwell (1908) 154 Cal. 638, 639 [98 P. 1058].)
Mrs. Herrera's initial mistake is viewing herself as having an "entitlement" or "right" to an allowance. Section 6540 differentiates between classes of claimants covered by subdivision (a)  who "are entitled" to a family allowance  and those covered by subdivision (b)  who "may be given" an allowance. This plain language establishes that Mrs. Herrera has no entitlement because she is a subdivision (b) claimant. The only right unquestionably belonging to her was the right to apply for an allowance (see Cunha's Estate v. C.I.R. (9th Cir.1960) 279 F.2d 292, 297), a right which has now been exhausted. Unless and until granted one by the probate court, she had neither an entitlement (see In re Lux (1896) 114 Cal. 73, 87 [45 P. 1023] (dis. opn. of Temple, J.)) nor a vested right (Estate of Blair, supra, 42 Cal.2d 728 at p. 733) to an allowance. Without an order to that effect, Mrs. Herrera does not stand on an equal footing with Farrell, the unstated premise underpinning most of her arguments. Whereas Farrell has its conclusive final judgment in the form required by law (see fn. 3, ante), Mrs. Herrera has only her hope of a family allowance. There is consequently no basis for treating Mrs. Herrera as someone with a family allowance who is to be kept waiting while a creditor improperly gets ahead of her in the line for payment from the estate.
Given that all of the authorities cited by the parties deal only with mandatory allowances, they obviously cannot be dispositive on the issue of whether the probate court wrongly denied the discretionary allowance requested by Mrs. Herrera. Upon discovering the absence of any reported decision addressing the nature and extent of the discretion recently granted by section 6540, we requested supplemental briefing as to the scope of the probate court's discretion and whether equitable considerations could figure in the exercise of that discretion.
Mrs. Herrera submits that "The reason for granting discretion to the Court in connection with a family allowance to certain categories of claimants, *637 such as dependent parents, clearly does not imply that the Court is entitled to place the interests of creditors above the interests of the dependent parents." She sees the probate court's discretion as confined to these factors: (1) "Was the parent(s) actually dependent in whole or in part on the decedent for support?" (2) "What were the circumstances of the dependent parent(s) at the time of the decedent's death?" and (3) "What is the amount necessary or what is a reasonable amount for the maintenance of the dependent parent(s)?"[6] This view of the probate court's discretion is too restrictive.
The gist of Mrs. Herrera's view is that if a parent can show a continuing need for maintenance previously supplied by the decedent, the only real issue for decision is the amount of the allowance. The similarity between this approach and that used for awarding a mandatory allowance (see fn. 4, ante) is striking. It would in effect require parents such as the Herreras to be found dependent as a matter of law, which would in turn make it virtually obligatory that they be awarded an allowance. For all intents and purposes, this would create a new class of mandatory allowance. It would not only obliterate the distinctions between the groups of applicants so carefully delineated in subdivisions (a) and (b) of section 6540, it would stultify the discretion that the statute expressly gives to the probate court.
Judicial discretion must be informed, so that its exercise does not amount to a shot in the dark. (See e.g., In re Cortez (1971) 6 Cal.3d 78, 85-86 [98 Cal. Rptr. 307, 490 P.2d 819]; Gossman v. Gossman (1942) 52 Cal. App.2d 184, 194 [126 P.2d 178].) As previously mentioned, Mrs. Herrera's petition for a family allowance came on for hearing at the same time as the account she was submitting, together with Farrell's motion to have her surcharged. As is apparent from the probate court's ruling, information developed in reviewing Mrs. Herrera's stewardship of the estate played a part in the decision to deny her petition. This was entirely appropriate.
It would be equally appropriate for equitable considerations to have motivated that decision. (3) Equity is implicit in the exercise of discretion (see People v. Crandell (1988) 46 Cal.3d 833, 863 [251 Cal. Rptr. 227, 760 P.2d 423] and decisions cited), and has long been recognized as inhering in the jurisdiction of the probate court. (See e.g., Schlyen v. Schlyen (1954) 43 Cal.2d 361, 371 [273 P.2d 897]; Verdier v. Roach (1892) 96 Cal. 467, 478 [31 P. 554].) Accordingly, equitable principles could be consulted by the *638 court when it evaluated Mrs. Herrera's petition for a family allowance. (See Estate of Yoell (1913) 164 Cal. 540, 554-555 [129 P. 999].)
A hallmark of equity is comparing the relative merits and faults of parties with respect to the controversy. (See Blain v. Doctor's Co. (1990) 222 Cal. App.3d 1048, 1059 [272 Cal. Rptr. 250]; Civ. Code, §§ 3514, 3525, 3527, 3529.) Such a comparison does not work to Mrs. Herrera's advantage.
(2b) Entrusted with administering the estate, Mrs. Herrera was removed as administrator after three years in that position for failing to perform her responsibilities. During that period, while Farrell's undisputed claim for work done while decedent was still alive went unpaid, she was withdrawing more than $20,000 of estate funds for her private use without the requisite authorization from the probate court. This went undiscovered until Mrs. Herrera filed an accounting, 10 months after the deadline set by the court when it suspended her powers as administrator.
By the time it heard Mrs. Herrera's petition for a family allowance, the probate court knew that the estate's financial resources were meager and inadequate to its liabilities. The court could conclude that granting the allowance as requested might produce several undesirable consequences.
First, it would burden the estate with a new liability of approximately $30,000, which would have the dual effects of making the estate insolvent and Farrell's judgment worthless. (4) Existing precedent holds that a probate court has discretion to deny or terminate a mandatory allowance if necessary to avoid insolvency threatened by pending litigation. (See Estate of Anderson, supra, 68 Cal. App.3d 1010 at pp. 1013-1015 and decisions cited.) There is no reason in either law or logic why a comparable latitude should not extend to discretionary allowances. (Civ. Code, § 3511.)
(2c) Second, the family allowance might be used by Mrs. Herrera as a credit to offset the $20,000 she had already spent, should the court order that the latter sum be repaid to the estate, as indeed occurred. Although the fact that an applicant for a family allowance has improperly received estate funds from the administrator does not preclude a mandatory allowance (see Estate of Fretwell, supra, 154 Cal. 638 at p. 639), the situation is materially different if the applicant for a discretionary allowance is herself the administrator and thus paid the funds to herself. Such an applicant would not have the benefit of the defense of good faith reliance on the acts of another. The applicant's own conduct being a fit subject for equitable scrutiny (see Estate of Lankershim (1936) 6 Cal.2d 568, 573-574 [58 P.2d 1282]), the probate court could conclude that a number of factors relative to Mrs. Herrera's *639 actions weighed against granting her application. Her delay in submitting her accounting in the face of an express order, plus her unauthorized removal of estate funds, hindered settlement of the estate and also moved it to the brink of insolvency. The probate court could take these matters into consideration. (See Estate of Dougherty (1951) 102 Cal. App.2d 785, 788 [228 P.2d 857].)
It is true that a mandatory family allowance will not be denied solely by reason of delay in making the application for it. (See e.g., Estate of Fretwell, supra, 154 Cal. 638.) Nevertheless, the probate court could infer from the timing of Mrs. Herrera's application that her motive was to consume all of the estate's assets and ensure that Farrell's judgment would ultimately go unsatisfied. (Cf. Estate of Secord, supra, 84 Cal. App.2d 783 at p. 785.)
With the family allowance petition, the accounting, and the motion to surcharge all presented to it for decision, the probate court had jurisdiction to effect an equitable resolution of the entire controversy between Mrs. Herrera and Farrell. (See Estate of Baglione (1966) 65 Cal.2d 192, 196-197 [53 Cal. Rptr. 139, 417 P.2d 683]; Estate of Eilert (1933) 131 Cal. App. 409, 416-417 [21 P.2d 630].) But, whereas Farrell had a valid claim perfected in a timely and proper fashion, Mrs. Herrera had a demonstrated history of noncompliance with established procedures and an express court order. These wrongful acts could be deemed to amount to an equitable disqualification of her subsequent petition for a family allowance. (See DeGarmo v. Goldman (1942) 19 Cal.2d 755, 764 [123 P.2d 1]; Estate of Helwinkel (1962) 199 Cal. App.2d 283, 287-288 [18 Cal. Rptr. 473].) In ruling that "Under the circumstances, I think this creditor should be paid," the probate court accepted that it would be inequitable for Mrs. Herrera to become the indirect beneficiary of her prior misconduct at the expense of an innocent party who might already have been paid but for the misconduct delaying settlement of the estate. (See Civ. Code, § 3517; Newhall v. Newhall (1964) 227 Cal. App.2d 800, 819 [39 Cal. Rptr. 144].) In light of the circumstances discussed above, it cannot be said that the probate court's ruling constitutes an abuse of the discretion granted by section 6540.
The order is affirmed. The parties shall bear their respective costs of appeal.
Perley, J., and Reardon, J., concurred.
A petition for a rehearing was denied November 4, 1992, and appellant's petition for review by the Supreme Court was denied January 14, 1993.
NOTES
[1] Statutory references are to the Probate Code unless otherwise indicated.
[2] This narrative is derived from the record on appeal and the probate court's file, lodged herein and deemed included in the record (Cal. Rules of Court, rule 12(a)).
[3] Farrell filed a creditor's claim with the estate in June of 1988. After commencing an action in municipal court, Farrell obtained an uncontested judgment in the amount of $10,332.12. This judgment, which was against Mrs. Herrera in her representative capacity as required by section 9301, was eventually entered in October of 1990.
[4] The allowance is not "mandatory" in the strict sense that a court has something like a ministerial duty to award it. Although the statute declares the applicant "entitled" to an allowance, the applicant has always been required to demonstrate need for an allowance. Once need is proven, however, the court usually has only to determine the amount and duration of the allowance. (See Estate of Blair (1954) 42 Cal.2d 728, 730 [269 P.2d 612] ["The allowance ... upon proper application ... must be granted even if the estate is insolvent."]; Estate of Hoffman (1963) 213 Cal. App.2d 635, 643-644 [29 Cal. Rptr. 60] and decisions cited; fn. 6, post.)
[5] Section 11420 provides in pertinent part:

"(a) Debts shall be paid in the following order of priority among classes of debts ...:
"(1) Expenses of administration.
"(2) Funeral expenses.
"(3) Expenses of last illness.
"(4) Family allowance.
"(5) Wage claims.
"(6) Obligations secured by a mortgage, deed of trust, or other lien....
"(7) General debts, including judgments not secured by a lien and all other debts not included in a prior class.
"(b) ... No debt of any class may be paid until all those of prior classes are paid in full...."
[6] These factors bear a close resemblance to those developed in connection with mandatory allowances: "(1) Is any sum necessary for the support and maintenance of the petitioner during the period of the administration of decedent's estate?; and (2) If a sum is necessary for ... support and maintenance, what is a reasonable amount to allow the petitioner?" (Estate of Hoffman, supra, 213 Cal. App.2d 635 at p. 644; see Estate of Silver (1949) 92 Cal. App.2d 173, 176 [206 P.2d 895].)